JOURNAL ENTRY and OPINION
Defendant-appellant Alfred Holly appeals from his convictions after a jury trial for two offenses, viz., murder, with a firearm and a repeat violent offender specification, and having a weapon while under disability, with firearm specifications.
Appellant challenges his convictions and sentences on numerous grounds, asserting his convictions are based upon insufficient evidence, he was denied his right to a fair trial, the trial court improperly instructed the jury, he was denied his right to effective assistance of counsel, the laws pursuant to which he was sentenced are unconstitutional, the trial court failed to consider the statutory requirements prior to imposing the sentences, and his sentence is improper. This court has considered all of appellant's assertions in light of the record and finds only the last has merit. Therefore, appellant's convictions are affirmed, but this case must be remanded for re-sentencing in accordance with the statutory requirements.
Appellant's convictions stem from an incident that occurred on the evening of March 28, 1997. The testimony of the state's witnesses established the following sequence of events.
Appellant, who was nearly thirty years old, his younger brother Ernest, and some others from appellant's neighborhood were associated with each other in a "gang"[1] known as the "Rockland." The Rockland group's area extended from Lakeview Avenue to "East 115th and Kelton" Avenue. To the south and east of this area was the territory of another group, known as the "Lee boys."
Appellant had installed recording equipment in his house located on East 123rd Street in Cleveland, Ohio; his friends, many of whom were teenagers, often visited to "rap" along with "the beats" appellant had made. Several of these friends were at appellant's house that evening.
On the night of the incident, appellant's young friend, Brian Howard, left appellant's house at approximately 9:00 p.m. with some others to attend a party being held at a house located on Kelton Avenue near East 116th Street. When Howard arrived there, he saw some teenaged Lee boys also had come to the party.
After a short time, since there was some tension between groups, the members of the Lee boys decided to leave. They exited the house and began walking south down East 115th Street toward Itasca Avenue. As they did so, some members of the Rockland group just were arriving. The new arrivals included brothers Marice and Mario Freeman and also appellant's brother, Ernest. Howard, who had followed the Lee boys out of the house, stood on the porch. Howard heard someone from the Lee boys group loudly announce, "Ain't no hoes[2] in the party."
The members of the Rockland group who were arriving took offense at this remark. One of the Freeman brothers confronted the boy who had made the comment and his companion, Anthony Johnson. Freeman demanded to know what had been meant by the statement. Johnson's companion attempted to diffuse the situation, stating, "We ain't causing no trouble, or nothing," then adding, "We just trying to get home."
However, at that time, appellant arrived at the scene in a car. The car, driven by appellant's female cousin, stopped near East 115th Street and Itasca Avenue. Marice Freeman went to the rear passenger window and requested a gun from appellant. Appellant exited the car with two handguns,[3] saw the "commotion" between the two rival groups, noticed his brother was involved, and began firing the weapons at the Lee boys.
When they saw the weapons, "everybody ran." Most of the members of the Lee boys group fled down Itasca Avenue; Howard also ran as he came from the porch of the house toward appellant, intending to discourage appellant's gunfire. Howard glanced down Itasca Avenue and saw one of the Lee boys, whom he later identified as Benjamin McDougall, "fly in the air." Howard surmised McDougall had been shot, but then he saw McDougall return to his feet and run into a back yard. When Howard reached appellant, he informed appellant the people at whom appellant had been shooting were "little kids." Appellant "started laughing." For the Rockland group, the incident apparently was over.
When the members of the Lee boys reassembled, however, they noticed McDougall was missing. Their efforts to locate him that night were unsuccessful.
The following morning, Cynthia Lightner looked out the window of her apartment, which was in a building located at East 114th Street and Itasca Avenue, and saw the body of a young man lying on the grass of the yard at the rear of the building. The young man later was identified as Benjamin McDougall.
An autopsy of the body was conducted on March 30, 1997. McDougall was found to have died from exsanguination as the result of a gunshot wound to the lower portion of his back. After its entry into the body, the .9mm pellet had perforated McDougall's sacrum, intestines, mesentery and an artery.
Police officers investigating the scene of the incident eventually recovered five .9mm spent casings and one .25mm spent casing from the ground near the intersection of East 115th and Itasca Avenue. The marks on the .9mm spent casings matched those on the pellet recovered from the victim's body. Although the officers interviewed many of the victim's associates, they obtained the names of only three potential suspects, viz., the Freeman brothers and "Diz Dog."[4] Moreover, none of the persons questioned would identify a particular individual as the "shooter."
In June 1997, David Matuszny, the detective in charge of the McDougall investigation, located Mario Freeman. Although Mario originally gave Matuszny a "defendant's" statement regarding the incident, at the conclusion of the statement, Matuszny eliminated Mario as a suspect in the shooting.
In July 1997, Matuszny located Marice Freeman. Marice gave Matuszny an oral statement.
In October 1997, Matuszny located Brian Howard, who also gave an oral statement. Howard identified other potential witnesses to the shooting in his statement. Matuszny interviewed those witnesses, then conducted a second interview of Marice.
In November 1997, Marice and appellant were indicted separately by the Cuyahoga County Grand Jury. Marice was charged with two counts of felonious assault. Appellant was charged with the following offenses: (1) murder, R.C. 2903.02, with a three-year firearm specification, R.C. 2941.145, a notice of prior convictions, R.C. 2929.13(F) (5), and a repeat violent offender specification, R.C. 2929.01(E); and (2) having a weapon while under disability, R.C. 2925.13(A) (2), with a one-year firearm specification, R.C. 2941.141, and a three-year firearm specification, R.C. 2941.145. Subsequently, Marice Freeman gave a third statement to Matuszny and also arranged a plea agreement with the state concerning the charges against him.
Appellant eventually was arraigned in December 1997. His case proceeded to a jury trial in March 1998. During its case-in-chief, the state presented, inter alia, the following witnesses: (1) Anthony Johnson; (2) Brian Howard; (3) Marice Freeman; (4) Cynthia Lightner; and (5) Det. Matuszny.
The jury ultimately returned a verdict of guilty on each charge. Following a presentence investigation and report, the trial court sentenced appellant to consecutive terms of incarceration as follows: on count one, fifteen years to life, together with three years for the firearm specification and five years for the repeat violent offender specification; and on count two, five years.
Appellant has filed a timely appeal of his convictions and sentences. He presents fourteen assignments of error for this court's review. Appellant's assignments of error will be addressed in logical order and will be combined when appropriate.
Appellant's first assignment of error states:
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS DENIED A FUNDAMENTALLY FAIR TRIAL.
In this assignment of error, appellant argues his conviction for murder must be reversed since it was based upon the introduction of improper evidence, viz., that he was a gang member and that Matuszny focused on appellant as the perpetrator of the crime. In making this argument, appellant does not contend the trial court erred in admitting this evidence.[5]
Nevertheless, appellant's argument is meritless.
This court previously has held that testimony of a defendant's association with a gang is admissible when such evidence is "highly relevant to the state's case." State v. Lewis (Dec. 26, 1991), Cuyahoga App. No. 59465, unreported. In Lewis, the defendant's gang affiliation was highly relevant since it "was the catalyst for the entire chain of events leading to the victim's death."
This court also has permitted a police officer to explain the steps he pursued in his investigation of a case. State v. Rogers
(May 21, 1998), Cuyahoga App. Nos. 72736, 72737, unreported; see,also, State v. White (Apr. 16, 1998), Cuyahoga App. No. 72011, unreported.
Since the facts in Lewis and Rogers are closely comparable to the facts in this case, and especially in view of the fact that a portion of appellant's defense strategy challenged the thoroughness of the police investigation into the identity of the perpetrators of the incident, appellant's right to a fair trial was not compromised by the admission of the evidence of which he now complains.
Accordingly, appellant's first assignment of error is overruled.
Appellant's fourteenth assignment of error states:
 DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HIS MOTION FOR JUDGMENT OF ACQUITTAL WAS OVERRULED.
Appellant argues the evidence was insufficient to establish the element of "purpose"; therefore, the trial court erred in denying his motion for acquittal.[6]
This assignment of error also lacks merit.
 The standard for determining whether a motion for acquittal is properly denied is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus, as follows:
 Pursuant to Crim.R. 29 (A), a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
 A motion for judgment of acquittal under Crim.R. 29 (A) should be granted only where reasonable minds could not fail to find reasonable doubt. State v. Bridgeman, supra; State v. Martin (1985), 19 Ohio St.3d 122, 130, 19 OBR 330, 337, 483 N.E.2d 1157, 1165.
State v. Apanovich (1987), 33 Ohio St.3d 19, 23. See, also, Statev. Dennis (1997), 79 Ohio St.3d 421.
The evidence must be viewed in a light most favorable to the prosecution. State v. Martin (1983), 20 Ohio App.3d 172. Thus, a reviewing court will not reverse a verdict where there is substantial evidence upon which the trier of fact could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169;State v. Jenks (1991), 61 Ohio St.3d 259.
Appellant was convicted of violation of R.C. 2903.02, which prohibits a person from purposely causing the death of another. "Purpose" is defined in R.C. 2901.22(A) as the specific intent to cause a certain result. A jury may presume an intent to kill where the natural and probable consequence of a defendant's act is to produce death and the surrounding circumstances support a conclusion the defendant had an intent to kill. State v. Edwards
(1985), 26 Ohio App.3d 199.
This court and other appellate courts in this state previously have held that the act of pointing a functioning firearm at a group of individuals and then shooting it at them will support the element of "purpose" contained in R.C. 2903.02. See, State v.James (Sept. 24, 1998), Cuyahoga App. No. 72922, unreported;State v. Smith (1993), 89 Ohio App.3d 497.
In this case, both Howard and Marice Freeman testified they observed appellant firing two handguns, a .9mm and a .25mm, at the fleeing Lee boys. Howard saw the victim "fly" into the air then rise to continue his escape. The victim later was discovered in a yard located in the direction he had taken. The victim died as the result of a gunshot wound to his lower back. The pellet discovered in his body had markings that matched the casings found on the street where appellant had been standing when he fired the guns.
Thus, viewing the record in a light most favorable to the state, a rational factfinder could have found the essential elements of the crime of murder were proven beyond a reasonable doubt. State v. Dennis, supra. Since it is within the province of the jury to choose between competing constructions of the evidence and an appellate court will not substitute its judgment for that of the jury, the trial court did not err in overruling appellant's motion for acquittal. State v. Jenks, supra at 273.
Accordingly, appellant's fourteenth assignment of error also is overruled.
Appellant's third, fourth and fifth assignments of error are addressed together as follows:
 III. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT INSTRUCTED THE JURY ON PURPOSE IN A MANNER WHICH DIMINISHED THE REQUIREMENT OF PROVING A SPECIFIC INTENT.
 IV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE COULD BE HELD RESPONSIBLE FOR AN INTERVENING ACT.
 V. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ENTERED THE JURY ROOM OUTSIDE THE PRESENCE OF DEFENDANT AND GAVE AN ADDITIONAL INSTRUCTION.
In these assignments of error, appellant contends certain jury instructions given during his trial were improper. It first must be noted appellant failed to object to any of the trial court's instructions; therefore, appellant's contentions can succeed only if plain error exists. State v. Underwood (1983), 3 Ohio St.3d 12. Moreover, in considering appellant's contentions, this court is mindful that in reviewing jury instructions, each instruction must be viewed in the context of the overall charge, not merely judged in artificial isolation. State v. Price (1979), 60 Ohio St.2d 136.
Appellant initially asserts the trial court's instruction on specific intent was "diluted and diminished"; however, a review of the challenged instruction reveals it simply tracks the precise language set forth in R.C. 2901.22(A). Thus, in the context of the entire charge, it was appropriate. State v. Wilson
(1966), 74 Ohio St.3d 381 at 392-393.
Appellant further asserts the trial court's instruction concerning causation transformed the requirement of specific intent to the intent required in a "negligence action." This assertion also must be rejected since an issue was raised by the defense during trial concerning the consequences of the victim's inability to receive immediate medical attention for the gunshot wound. State v. Comen (1990), 50 Ohio St.3d 206.
In giving its instructions to the jury on the offense of murder, the trial court very clearly stated the jury must find the defendant had the specific intent to kill the victim. Statev. Thompson, (1987), 33 Ohio St.3d 1 at 12. Hence, appellant's third and fourth assignments of error are overruled.
Appellant also challenges the procedure followed when the jury presented a question to the trial court during its deliberation.
The record reflects the jury requested "the legal definition of reasonable doubt." Since the original trial judge was unavailable, another judge agreed to assume his duties for the purpose of re-reading that instruction to the jury. Appellant's attorney waived appellant's presence. The proceeding thereupon was conducted on the record in the jury room.
Appellant does not contend the text of the instruction improperly was altered; he contends only that the procedure was improper. However, this case presents different facts from those set forth in State v. Foster (Nov. 2, 1995), Cuyahoga App. No. 68036, unreported, upon which appellant relies to support his contention.
In Foster, the trial court arranged for the court bailiff to perform his function, over the defendant's objection and without the presence of a court reporter to transcribe the proceedings. Here, appellant's presence was waived, another trial judge was summoned, and the proceedings were conducted on the record. Although it may have been better practice to assemble the jury in the courtroom, the procedure followed did not contravene either R.C. 2945.10(G) or R.C. 2945.33. State v. White, supra. Therefore, appellant's fifth assignment of error also is overruled.
Appellant's second assignment of error states:
 DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
Appellant argues his trial counsel was ineffective on numerous grounds.
The claim of ineffective assistance of counsel requires proof that "counsel's performance has fallen below an objective standard of reasonable representation" and, in addition, that prejudice arises from counsel's performance. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976), 48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, paragraph three of the syllabus.
The burden is on defendant to prove ineffectiveness of counsel.State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id.; see,also, Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id.
The record with regard to trial counsel's actions in this case fails to demonstrate counsel's performance fell below an objective standard of reasonableness.
Appellant first contends counsel was ineffective for eliciting details of the police investigation of the incident during his cross-examination of Det. Matuszny. This contention must be rejected.
It is clear that counsel sought the testimony in order to discredit the results of Matuszny's investigation. Matuszny could not establish the identity of the shooter for a lengthy period of time; when he eventually did so, it was through the apparently arbitrary elimination of evidence that demonstrated Marice Freeman may have possessed and fired a gun during the confrontation of Johnson and his companion. In view of Freeman's subsequent agreement with the state concerning his own indictment on charges resulting from the incident, counsel's efforts in this area were both calculated and reasonable.
Appellant next asserts counsel was ineffective for introducing the defense exhibits, all of which related to appellant's recording studio. The evidence later was used by the prosecution to suggest appellant was involved in gang activities. A review of the record, however, fails to demonstrate counsel's action was inappropriate; it obviously was part of counsel's strategy to portray appellant both as merely a mentor to the young men who visited his recording studio and as a person with such a proprietary interest in the valuable equipment that he would not leave it unattended for any length of time.
Thirdly, appellant asserts counsel was ineffective for his failure to object to the prosecution's improper remarks during closing argument. This contention also is baseless.
A review of the challenged remarks reveals the prosecutor was not vouching for the credibility of his witness but merely explaining his version of the inferences that could be drawn from the evidence. See, e.g., State v. Dawson (Nov. 18, 1993), Cuyahoga App. No. 63122, unreported; cf., State v. Carpenter
(1996). 116 Ohio App.3d 615. Since the prosecutor also repeatedly stated to the jury that it was to rely on its own memory of the testimony and to listen to the trial court's instructions on the law, counsel's objection to the prosecutor's comments would have served no useful purpose.
Fourthly, appellant asserts counsel was ineffective for allowing proof of appellant's prior conviction to be presented to the jury "in an unrestricted manner." In making this assertion, appellant fails to provide any suggestions as to any particular restrictions on this evidence that should have been followed by either counsel or the trial court. Moreover, since proof of appellant's conviction was an essential element of R.C. 2923.13, its introduction was inevitable. Counsel, therefore, cannot be faulted on this ground.
Appellant next asserts counsel was ineffective for his failure to request certain cautionary instructions be given to the jury. This assertion also is meritless.
First, counsel hardly could request a cautionary instruction concerning Marice Freeman's "plea" when no such event yet had taken place. Second, since counsel's defense strategy was to deny completely any participation in the incident by appellant, a jury instruction on involuntary manslaughter would have been neither appropriate nor accepted by the trial court. State v. Thomas
(1988), 40 Ohio St.3d 213; State v. Solomon (1981), 66 Ohio St.2d 214, syllabus 2; State v. Clark (1988), 38 Ohio St.3d 252. For a similar reason, counsel's request for an instruction on "accomplice" testimony would have been inimical to his theory of the case. Cf., State v. Ferguson (1986), 30 Ohio App.3d 171.
Finally, in view of this court's disposition of appellant's third and fourth assignments of error, counsel's failure to challenge the trial court's instructions to the jury concerning the elements of the crime of murder does not demonstrate deficiency. It is axiomatic that trial counsel cannot be deemed ineffective merely for failure to perform a vain act. Vaughn v.Maxwell, supra.
The record clearly reveals defense counsel was obviously prepared in his representation of appellant and was an effective advocate for his client. Appellant has failed to demonstrate either that counsel's performance fell below an objective standard of reasonableness or that he was prejudiced thereby.State v. Smith, supra; State v. Davis (May 22, 1998), Lake App. No. 96-6-167, unreported; cf., State v. Nichols
(1996), 116 Ohio App.3d 759.
Accordingly, appellant's second assignment of error also is overruled.
Appellant's seventh, eighth, ninth and tenth assignments of error state:
 VII. DEFENDANT WAS UNCONSTITUTIONALLY SENTENCED AS A REPEAT VIOLENT OFFENDER UNDER A STATUTE AND SPECIFICATION WHICH IS A BILL OF ATTAINDER.
 VIII. DEFENDANT WAS UNCONSTITUTIONALLY SUBJECTED TO MULTIPLE PUNISHMENTS FOR THE SAME OFFENSE.
 IX. DEFENDANT WAS UNCONSTITUTIONALLY SENTENCED AS A REPEAT VIOLENT OFFENDER BY REASONS OF EX POST FACTO LEGISLATION WHICH IS ARBITRARY, UNREASONABLE AND DISCRIMINATORY.
 X. DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO HAVE A JURY MAKE A DETERMINATION AS TO WHETHER DEFENDANT WAS A REPEAT VIOLENT OFFENDER.
These assignments of error all present constitutional arguments relating to the statutes pursuant to which appellant was sentenced. These arguments, however, were neither raised nor considered in the trial court; hence, they are waived. State v.Awan (1986), 22 Ohio St.3d 120, at the syllabus.
Appellant's sixth assignment of error states:
 DEFENDANT WAS UNCONSTITUTIONALLY SENTENCED FOR HAVING A WEAPON UNDER A DISABILITY AS A THIRD DEGREE FELONY WHEN NEITHER THE INDICTMENT NOR THE JURY INSTRUCTIONS STATED THE NECESSARY ELEMENTS TO CONSTITUTE A THIRD DEGREE FELONY.
Appellant argues the sentence imposed by the trial court for his conviction of having a weapon while under disability was improper because he was charged in the indictment with violation of R.C. 2923.13(A) (2) rather than R.C. 2923.13(B). The state concedes this assignment of error. Moreover, the record confirms it has merit. R.C. 2923.13(C).
Accordingly, appellant's sixth assignment of error is sustained.
Appellant's twelfth assignment of error states:
 DEFENDANT WAS ILLEGALLY SENTENCED AS A REPEAT VIOLENT OFFENDER WHICH WAS INAPPLICABLE TO MURDER.
Appellant argues the provisions of R.C. 2929.14(D) (2) do not apply to his conviction for murder. Since this argument is contradicted by the specific terms of R.C. 2929.01(EE) (1) and (2) (a) (i) it is rejected.
Therefore, appellant's twelfth assignment of error is overruled
Appellant's eleventh and thirteenth assignments of error state:
 XI. DEFENDANT WAS ILLEGALLY SENTENCED TO A TERM OF IMPRISONMENT AS A REPEAT VIOLENT OFFENDER.
 XIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW AND SUBJECTED TO A CRUEL AND UNUSUAL PUNISHMENT WHEN HE RECEIVED MAXIMUN CONSECUTIVE SENTENCES.
In these assignments of error, appellant argues the trial court failed to adequately explain the basis for its imposition of the maximum sentences in this case. A review of the record in conjunction with appellant's sentencing hearing renders his argument unpersuasive.
The trial court referred appellant for a presentence investigation and report, then made the following comments at appellant's sentencing hearing:
 Mr. Holly, contrary to your protestations, the fact of the matter is that the jury found that it was you who fired these weapons. There was no evidence to the contrary, that it was you that stepped out of the car and fired these firearms gangster style or gangster rap style at this young fellow, at a group of young people actually, hitting Mr. McDougal (sic) and killing him. The use of guns in the community, in the neighborhood, anywhere, is outrageous, absolutely outrageous. You terrorized this community.
 A witness during the course of this trial, as you may recall, came into court and testified how upon hearing these shots from these guns that you used was forced to dive on the floor and crawl through her own home and crawl into her bedroom and crawl in or around or under the bed, so as to protect herself from these random shots that you were firing.
 There was testimony that some of the bullets were found on or around apartment houses near where Mr. McDougal's (sic) dead body lay. Any one of these errant shots could have gone through a window, gone through a house and killed yet another child, a baby, a mother, a father. These actions are absolutely outrageous.
 Now, what you did here is you did, in fact, kill a 15 year old boy. It was argued during the course of trial that you were a gangster rap want-to-be or a gangster want-to-be. In point of fact, it is the Court's opinion that the evidence showed that you are, in fact, a gangster, that you have achieved your goal. You are no longer a gangster want-to-be, you are, in fact, a gangster.
(Emphasis added.)
Regarding an argument such as appellant's, this court previously has stated as follows:
 * * * When the offense is a felony of the first or second degree, a prison term is presumed to be necessary in order to comply with the purposes of the sentencing statute (although the court may impose a community control sanction if certain criteria are present) See R.C. 2929.13(D). The court's sentencing discretion is limited, however, in deciding when to impose a maximum sentence. R.C. 2929.14(C) which states:
 (C) Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D) (3) of this section, and upon certain repeat violent offenders in accordance with division (D) (2) of this section.
 The only time we can review a maximum sentence permitted by law is if a defendant asks us to review the court's decision and its reasons for imposing the maximum sentence. See R.C. 2953.08(A) and (G); State v. Assad (June 11, 1998), Cuyahoga App. Nos. 72648 and 72649, unreported at 4. We review the record to determine whether the maximum sentence i s affirmatively supported by the record. R.C. 2929.13(2) (b) (sic); State v. Beasley (June 11, 1998), Cuyahoga App. No. 72853, unreported. We may increase, reduce, or otherwise modify a sentence that is appealed or "may vacate the sentence and remand the matter." R.C. 2953.09(G) (1). State v. Assad, supra.
 The court's remarks show it found the offense to be the worst form of felonious assault and also found defendant's past criminal history * * * made it likely he would commit offenses in the future. Our review of the record fails to convince us that the court abused its discretion in this regard.
 * * * We think that firing a handgun at passing motorists (with the concomitant risk of injuring innocent bystanders) shows a depravity of mind and disregard of human life sufficient to justify the court's decision to impose the maximum penalty.
State v. Jordan (Nov. 25, 1998), Cuyahoga App. No. 73364, unreported. (Emphasis in original; underscoring added.)
From the statutory language quoted in the foregoing, when a repeat violent offender specification is included in the indictment, appellate review of the trial court's sentence clearly is less stringent. The trial court in this case had the benefit of a presentence report, appellant had been convicted of murder, and appellant's indictment included a firearm specification, a repeat violent offender specification and a specification that established his prior convictions for previous offenses. Moreover, the trial court commented that appellant's actions, which were similar to those considered in Jordan, were "absolutely outrageous"; this indicates the trial court considered the relevant statutory factors prior to pronouncing sentence.
This court, therefore, cannot find by clear and convincing evidence the sentence either is unsupported by the record or is contrary to law. R.C. 2953.08(G)(1)(a),(d).[7]
Since the record and the statutory mandates support the trial court's decision to impose the maximum sentence, appellant's eleventh and thirteenth assignments of error are overruled. Id.; R.C. 2929.14(D)(2)(a); see, also, State v. Goetz (Oct. 23. 1998), Hamilton App. No. C-970503, unreported; State v. Kauff
(Nov. 9, 1998), Meigs App. No. 97CA13, unreported; cf., State v.Davis (Dec. 3, 1998), Cuyahoga App. Nos. 73680, 73681, 73682, unreported; State v. Brooks (Nov. 5, 1998), Cuyahoga App. No. 74382, unreported.
Appellant's convictions are affirmed. This case is remanded in order that appellant may be re-sentenced for his conviction on count two in accordance with this court's disposition of appellant's sixth assignment of error.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES M. PORTER: A.J. and TIMOTHY McMONAGLE, J. CONCUR.
 ___________________ JUDGE KENNETH A. ROCCO
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] The testimony at trial established the term "hoes" was a slang expression intended to refer to "girls."
[3] The witnesses at appellant's trial described them as a .25mm and a .9mm handgun, the smaller one "chrome" and the larger one "black."
[4] Brian Howard testified appellant's nickname was "Dezog."
[5] In his second assignment of error, however, which is considered later in this opinion, appellant asserts his counsel was ineffective for permitting the introduction of this evidence.
[6] Appellant includes an argument that the conviction was against the manifest weight of the evidence; however, since it is presented in derogation of the requirements of App.R. 16 (A) (7), it will not be considered.
[7] Pursuant to the last portion of R.C. 2953.08(D), it appears that had appellant been convicted only of murder, appellate review of his sentence under this statute would have been precluded.