The State of Ohio, Appellee, *v.* Solomon, Appellant.

(No. 80-917—Decided May 20, 1981.)

216

*Mr. John T. Corrigan,* prosecuting attorney, and *Ms. Eloise G. Cookson,* for appellee.

*Mr. Paul F. Markstrom,* for appellant.

CELEBREZZE, C. J.   Appellant argues that the judgment of the Court of Appeals should be reversed because the trial court erred in instructing the jury that it could find that ap-

pellant had purposely caused Martha Glasgow's death with prior calculation and design even if it found that he planned to cause Charles Glasgow's death. Appellant further contends that the trial court erred in failing to instruct the jury on the lesser included offenses of murder and voluntary manslaughter.

In *Wareham* v. *State* (1874), 25 Ohio St. 601, this court held that a person could be convicted of second degree murder even if purpose and malice were directed at a person other than the actual victim. In so holding, the court stated, at page 607:

"***The intent to kill and the malice followed the blow, and if another was killed the crime is complete; and if deliberation and premeditation are added to the essential ingredients of murder in the second degree, the crime would be murder in the first degree. The purpose and malice with which the blow was struck is not changed in any degree by the circumstance that it did not take effect upon the person at whom it was aimed. The purpose and malice remain, and if the person struck is killed, the crime is as complete as though the person against whom the blow was directed had been killed, the lives of all persons being equally sacred in the eye of the law, and equally protected by its provisions. A blow given with deliberate and premeditated malice and with the intent and purpose to kill another, if it accomplished its purpose, can not be said to have been given without malice and unintentionally, although it did not take effect upon the person against whom it was directed.***"

In this passage from *Wareham,* this court recognized that when there is malice and premeditation, even if it is aimed at someone other than the victim, the mental state of the killer is as culpable as if he premeditated the death of the actual victim. The court held that when this mental state is combined with the act of causing the death of another, the resulting offense is to be treated as if the death of the actual victim were planned.

R. C. 2903.01(A), in defining aggravated murder, states:

"No person shall purposely, and with prior calculation and design, cause the death of another."

In *State* v. *Cotton* (1978), 56 Ohio St. 2d 8, this court discussed the term "prior calculation and design," as used in

R. C. 2903.01(A), which had replaced the requirement of premeditation and deliberation when the General Assembly enacted a new Criminal Code in 1974. The court stated, at page 11, that "[t]he apparent intention of the General Assembly in employing this phrase was to require more than the few moments of deliberation permitted in common law interpretations of the former murder statute, and to require a scheme designed to implement the calculated decision to kill. Thus, instantaneous deliberation is not sufficient to constitute 'prior calculation and design.' "

As with premeditation, the culpability of a scheme designed to implement the calculated decision to kill is not altered by the fact that the scheme is directed at someone other than the actual victim. Therefore, we hold that if one purposely causes the death of another and the death is the result of a scheme designed to implement the calculated decision to kill someone other than the victim, the offender is guilty of aggravated murder in violation of R. C. 2903.01(A).

R. C. 2945.74 states, in part:

"The jury may find the defendant not guilty of the offense charged, but guilty of an attempt to commit it if such attempt is an offense at law. When the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense."

R. C. 2903.02 states:

"(A) No person shall purposely cause the death of another.

"(B) Whoever violates this section is guilty of murder***."

R. C. 2903.03 states:

"(A) No person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another.

"(B) Whoever violates this section is guilty of voluntary manslaughter***."

In *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, this court discussed lesser included offenses, stating, at page 384:

"An offense may be a lesser included offense of another only if (i) the offense is a crime of lesser degree than the other, (ii) the offense of the greater degree cannot be committed without the offense of the lesser degree also being committed and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."

As to requirement (i), it is clear that both murder and voluntary manslaughter are offenses of lesser degree than aggravated murder. It is also clear that if one commits an aggravated murder, he also commits a murder.

Voluntary manslaughter is more problematic. To analyze this offense in terms of requirement (ii), we must look at the elements of the crime and not at mitigating circumstances. The presence of extreme emotional stress reasonably sufficient to incite one into using deadly force is analogous to a reduced *mens rea* requirement in that the culpability of the offense committed is reduced.

In *State* v. *Muscatello* (1978), 55 Ohio St. 2d 201, in reviewing a jury instruction regarding extreme emotional stress, this court stated, at page 203, that "***emotional stress, as described in R. C. 2903.03, is not an element of the crime of voluntary manslaughter. Such emotional stress is a circumstance, the establishment of which mitigates a defendant's criminal culpability. Furthermore, in a prosecution for aggravated murder, a defendant is not required to establish the mitigating circumstance of extreme emotional stress, as described in R. C. 2903.03, beyond a reasonable doubt or by a preponderance of the evidence in order for a jury to consider the lesser included offense of voluntary manslaughter."

It is clear that if one purposely causes the death of another, he also knowingly causes the death of another. Therefore, an aggravated murder cannot occur without the elements of voluntary manslaughter also being present.

Finally, as to requirement (iii), prior calculation and design does not have to be proved to convict someone of either murder or voluntary manslaughter. In addition, the presence of extreme emotional stress reasonably sufficient to incite one to use deadly force lessens the culpability of the *mens rea* involved.

As a result of the foregoing analysis, it is clear that

murder and voluntary manslaughter may be lesser included offenses of aggravated murder as defined in R. C. 2903.01(A).

Our analysis is not concluded by this holding. An offense becomes a lesser included offense of another for purposes of R. C. 2945.74 only if the trier of fact is presented with some evidence supporting a finding against the state and for the accused on an element of the greater offense which need not be shown to prove the lesser offense. In such a case an instruction on the lesser included offense is warranted. Juries must not be presented with unreasonable compromises. As we stated, at page 387, in *Wilkins, supra:*

"***Such unreasonable compromises are detrimental to both the state and the defendant. These compromises allow juries to lessen punishment at their unlimited discretion, even when they find the defendant guilty of the greater offense beyond a reasonable doubt. Further, they can allow juries to convict a defendant of a crime of which he is not guilty beyond a reasonable doubt with a clearer conscience than if only the greater offense were charged."

There is great potential for unreasonable compromises where the evidence adduced by a defendant constitutes a complete defense to the substantive elements of the crime charged. Because of this potential, this court, in *State* v. *Nolton* (1969), 19 Ohio St. 2d 133, and in *Wilkins, supra,* has held that where the evidence adduced on behalf of a defendant constitutes a complete defense to the substantive elements of the crime charged, an instruction on a lesser included offense should be given to the trier of fact only if, based on the evidence adduced on behalf of the state, the trier of fact can find for the defendant and against the state on some element of the greater offense which is not required to prove the commission of the lesser offense and for the state on the elements required to prove the commission of the lesser offense.

In *Wilkins,* the defendant claimed that he was entitled to an instruction on both rape and the lesser included offense of sexual battery. Rape differs from sexual battery in that it requires proof of the use of force rather than of the broader element of coercion and in that it requires that one act purposely rather than knowingly. In *Wilkins,* the jury was presented with two highly divergent stories. It had to choose between the

victim's story, which clearly involved the use of force and a purposeful mental state, and the defendant's contention that any sexual conduct between the victim and him was consensual. Once the jury determined that the sexual conduct was non-consensual, it could not find that coercion existed which did not involve the use of force nor could it find that the defendant's mental state was knowing but not purposeful. The state's version of the events in that case was not ambiguous. As a consequence, we held that an instruction on sexual battery would have been improper.

At page 388, in *Wilkins,* this court stated:

"The persuasiveness of the evidence regarding the lesser included offense is irrelevant. If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given. The evidence must be considered in the light most favorable to defendant."

Thus, if due to some ambiguity in the state's version of the events involved in a case the jury could have a reasonable doubt regarding the presence of an element required to prove the greater but not the lesser offense, an instruction on the lesser included offense is ordinarily warranted.

The sole evidence of a scheme designed to implement the calculated decision to kill adduced in the case at bar was the passage of time between the shootings of Howard McClairn and Charles Glasgow and the eventual killing of Martha Glasgow, the fact that appellant had obtained a gun, and the fact that he had traveled from Terry Glasgow's apartment to Charles Glasgow's apartment in the building next door. Although such evidence might have provided the jury with a reasonable basis for finding prior calculation and design, it is ambiguous in nature and did not necessarily lead to that conclusion. This is particularly true when Alfred McClairn's testimony is considered. He stated that Martha Glasgow was shot as she tried to prevent appellant from entering the apartment. Because the state's evidence is ambiguous regarding the issue of prior calculation and design, the trial court erred in refusing to instruct the jury on the lesser included offense of murder.

In addition, there was sufficient evidence to require an instruction on voluntary manslaughter. Appellant was aware that Charles Glasgow had brought a gun to Terry Glasgow's apartment because of his hostility to appellant and that the gun had been fired. A witness testified that appellant appeared to be "panicked" at approximately the time of the killing. It would be possible from the evidence for the jury to find that appellant was under extreme emotional stress reasonably sufficient to incite him to use deadly force.

Because it was error for the trial court to refuse to give instructions on murder and voluntary manslaughter, we reverse the judgment of the Court of Appeals, and remand the cause to the trial court for further proceedings.

*Judgment reversed and*
*cause remanded.*

W. BROWN, POTTER, WHITESIDE and LOCHER, JJ., concur.

HOLMES and C. BROWN, JJ., concur in part and dissent in part.

POTTER, J., of the Sixth Appellate District, sitting for P. BROWN, J.

WHITESIDE, J., of the Tenth Appellate District, sitting for SWEENEY, J.

CLIFFORD F. BROWN, J., concurring in part and dissenting in part.

I concur in the reversal of the judgment of the Court of Appeals to the extent of its holding that the trial court correctly refused to instruct the jury on the lesser included offense of murder, a violation of R. C. 2903.02. The reversal of the Court of Appeals can stand on that ground alone.

However, I dissent from our reversal of the Court of Appeals to the extent of our ruling that the Court of Appeals erred in affirming the trial court for its refusal to instruct the jury on the lesser included offense of voluntary manslaughter, a violation of R. C. 2903.03. In short, it is my view that the trial court correctly refused to charge the jury on voluntary manslaughter.

R. C. 2903.03, which prohibits voluntary manslaughter, reads, in part, as follows:

"(A) No person, while under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force, shall knowingly cause the death of another."

The summary of facts contained in the opinion, and supported by the record, contains no evidence raising an issue for submission to the jury' of "extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force***," pertaining to the defendant. This extreme emotional stress factor is an essential element of the crime of voluntary manslaughter. The lack of it warrants a refusal by the trial court to instruct the jury thereon. Such refusal to instruct the jury prevents the jury from reaching a compromise verdict of voluntary manslaughter where the defendant obviously has committed the more serious crime of aggravated murder or murder.

The record reveals that the defendant murdered Martha Glasgow by shooting her in cold blood. Martha did nothing to provoke the defendant to commit this senseless shooting and murder. To rule that this cruel, inhuman, senseless, purposeful killing by defendant could support a conclusion by the jury that the defendant was "under extreme emotional stress brought on by serious provocation reasonably sufficient to incite him into using deadly force," and thereby guilty of manslaughter only, is carrying the meaning of the language in R. C. 2903.03 to the ridiculous and absurd.

The victim, Martha Glasgow, had nothing to do with any claimed "extreme emotional stress" of defendant. This court should establish a rule of statutory construction that a voluntary manslaughter jury instruction should never be given to the jury when the victim had nothing to do with creation of any claimed "extreme emotional stress" of the defendant.

If the defendant in the case *sub judice* had a right to have the jury instructed on his "extreme emotional stress" so as to support a finding of guilt as to voluntary manslaughter only, then it is conceivable that in every jury trial for aggravated murder or purposeful killing the jury should be instructed on voluntary manslaughter so that the jury might find the defen-

dant guilty of voluntary manslaughter only. This is so because in every case where a defendant purposefully kills another in cold blood, with or without prior calculation and design, the defendant must be under some form of "extreme emotional stress." Otherwise it is inconceivable how a defendant could resort to the most heinous act imaginable by pulling the trigger of a gun to snuff out the life of another human being. Life is cheap when it is equated under such circumstances with voluntary manslaughter. It should not be so cheapened.

In fact it is a close call even to conclude that the Court of Appeals erred in affirming the common pleas court refusal to instruct the jury on murder, a violation of R. C. 2903.02. It is arguable that the common pleas court correctly refused to instruct the jury on murder because the facts so clearly support a finding of "prior calculation and design" in connection with the purposeful killing and that the defendant was thereby guilty of aggravated murder and nothing else.

If the concept "extreme emotional stress" should be applied as it has been here, then it is high time for the General Assembly to amend R. C. 2903.03, on voluntary manslaughter, so that juries cannot be misled into finding a defendant guilty of voluntary manslaughter when he should be found guilty of aggravated murder.

The decision this court has reached today on the issue of a jury instruction on voluntary manslaughter in this case is in conflict with our *per curiam* decision in *State* v. *Durkin* (1981), 66 Ohio St. 2d 158, wherein we stated, at page 160:

"Second, appellee was not entitled to a jury instruction on the offense of voluntary manslaughter because he failed to elicit any evidence of the mitigating circumstance of extreme emotional stress. Therefore, he could not have been prejudiced by the erroneous instruction."

On remand of this case to the common pleas court, that court should not be required to give a jury instruction on voluntary manslaughter.

HOLMES, J., concurs in the foregoing concurring and dissenting opinion.