Defendant-appellant Samuel Bulgin (d.o.b. April 7, 1972) appeals from his jury trial conviction of: (1) Aggravated Murder [R.C. 2903.01(A)] of Mr. Michael Roman ("Roman") with a firearm specification; and, (2) Having a Weapon While Under a Disability [R.C. 2923.131.[1] For the reasons adduced below, we affirm.
A review of the record on appeal indicates that eight witnesses testified on behalf of the prosecution. The first witness for the prosecution was Mr. Rob White. On the date of the offense, November 20, 1994, in the early morning hours, this witness, accompanied by his date for the evening (Ms. Bonnie Bodnovich), was driving into the area known as The Flats along the Cuyahoga River in the City of Cleveland. The witness parked his car on the street behind another car, in front of which stood three black males and one white male, near the Flat Iron Cafe. As the couple walked past this other car and the group of males, one of the black males addressed Ms. Bodnovich stating "Hey, blondie." (R. 19.) The couple ignored these men and went into a bar. One-half hour later, the couple left the bar and walked back to their car. As they walked, the couple heard a commotion with police cars and observed a body lying on the ground in a place where the other car had been, which had contained the four males. The previously seen males and the other car were not present at that time. The couple got into their car and drove away. The next day, the witness reported to the police in an oral statement what had happened to him and his girlfriend the night before. The witness could not identify any of the four males, or the appellant, for the police.
The second witness for the prosecution was Cleveland Police Detective Dale Moran. The witness testified that he was a uniformed patrolman at the time of the offense and was working as a part-time security guard while off-duty at the Flat Iron Cafe. At approximately 1:00 a.m., while the witness was seated in his vehicle at the entrance to the parking lot of the Flat Iron Cafe, the witness heard three gunshot reports. The witness visually surveyed the streets from his parked truck and observed a male walk across Center Street and enter Splash's Nightclub. A short time after the male had entered that nightclub, the security guard for that nightclub ran out of the club with his firearm drawn and yelled across the street to the witness that somebody had been shot around the corner. The witness then exited his truck with his firearm drawn and went to the corner of Center and Merwin Streets and proceeded down Center Street, finding a body in the street beyond the Flat Iron Cafe near the intersection of Fall Street. The witness then went into the Flat Iron Cafe and asked the bartender (Joe Ortiz) to call 9-1-1. The witness then returned to the location of the body and, after viewing the corpse, immediately identified it as "Little Mikey Roman," an employee of the Flat Iron Cafe. (R. 31.) The witness, who never had a problem with the victim, stayed with the body until EMS and the police arrived. While waiting, the witness located one shell casing and one bullet near the curb. He did not remember seeing the appellant that evening.
The third witness for the prosecution was Dr. Robert Challener from the Cuyahoga County Coroner's Office. This witness performed the autopsy on the victim, Michael Roman. The doctor described the victim as being 26 years old, 67 inches in height, and weighing 160 pounds. There were three gunshot wounds to the victim's body. The first wound was in the left chest, from the front and slightly downward, near where the collarbone joins the sternum. The second wound was in the side of the left chest at breast height, again from the front and angled downward. The third wound was through the right chest from right to left and angled upward. Either wound number one or number two could have been fatal. The doctor had no opinion which of the three wounds was inflicted in which order. A powder burn was found at the site of the third gunshot wound, indicating a relatively close range gunshot. Two bullets were recovered from the victim's body. A bag, which contained six individual smaller bags of marijuana, was found with the body. The victim's blood alcohol level was 0.22%.
The fourth witness for the prosecution was Cleveland Police Homicide Detective Michael Burger, a police officer of 29 years service. He was called upon at 1:45 a.m. on the date of the offense to go to the scene of the crime. Detective Edward Gray was also assigned to the investigation. The witness authenticated the photographs of the crime scene which were offered into evidence. The witness also detailed that two .380 caliber shell casings were found underneath the victim. Also found at the scene, beside the victim, was a bullet. No firearm was found at the scene.
The fifth witness for the prosecution was Ms. Sharon Rosenberg, a trace evidence examiner at the Cuyahoga County Coroner's office. Test results indicated that the victim's left hand contained gunshot residue. Tests for the presence of gunshot nitrite particles on the victim's clothing indicated that the firearm muzzle-to-target distance was the following: to the first wound identified by the coroner, a distance of approximately twelve inches; to the second identified wound, a distance of greater than two to three feet; the third wound, a distance of greater than two to three feet.
The sixth witness for the prosecution was Mr. Delbert Keeton, who was a friend of the victim. He saw the victim and Daniel Webb at the Flat Iron Cafe on the night of the murder. After sharing several drinks, the witness and the victim left to meet with Mr. Webb at another bar (Mickey Finn's) in the area. After meeting Mr. Webb, the three men returned to the Flat Iron Cafe. As they approached the Flat Iron Cafe, they observed a group of four or five males (one white, one Hispanic, and three black) standing on the street around a parked car. One of these unknown men called out, "Who has got a weed; who has got a weed." (R. 110.) The witness. went back into the Flat Iron Cafe alone, leaving the victim outside with Mr. Webb to move parked cars which were blocking Mr. Webb's car in. Mr. Webb was not seen again that night. Within five minutes of being inside, the cops came inside announcing that someone had been shot and to call 9-1-1. The witness ran out the rear door of the Flat Iron cafe to find his friend shot in the vicinity of the group of males who had been asking for marijuana earlier that night.
The seventh witness for the prosecution was Cleveland Police Detective Thomas Lucey, who worked in the forensic lab of the department. Tests conducted on the bullets and shell casings from the incident indicated that the bullets were a .380 caliber, that the casings were fired from the same weapon, and that the recovered bullets were fired from the same weapon.
The eighth witness for the prosecution was Mr. Joel Sidley. This witness, who was incarcerated for a drug trafficking conviction, had given a written statement to Detective Brady in February 1998. The witness identified the appellant as a good friend of his for approximately five years.[2] Mr. Sidley testified to being in The Flats at the time of the offense herein accompanied by a cousin, Marwin Smith. These two met the appellant, and a man who the witness believed was the appellant's cousin, and went to a reggae bar known as "Splash." Drinks were consumed by this foursome. After leaving Splash, the foursome walked around the corner to Center Street and "hung out." (R. 134-135.) While congregating on the street, a man and a woman walked by. The witness was positive that the male was a black man, but was unsure whether the female was black or white. (R. 151.) The appellant made a "smart remark" to the couple similar to, "Hey, f**k your girlfriend." (R. 135.) The couple walked past without further incident. Later, as the foursome were standing by the appellant's car, the victim approached them in his car and requested that they get the appellant's car out of his way because it was blocking the entrance to the parking lot. The appellant orally refused the request to move, saying in effect to the victim, "Hey, f**k you." (R. 136.) The victim parked his car in the back of the Flat Iron Cafe, got out of the car, and walked toward the appellant. The appellant noticed the approaching victim and reached into appellant's car and retrieved a firearm, holding it behind his back. The victim, trying to start a fight according to the witness, walked up to the appellant and said, "Hey, buddy, you have a problem? Do you have a problem, buddy?" (R. 136.) The victim pushed the appellant one time. The foursome told the victim to leave them alone, but the victim did not listen. The victim then pushed the appellant across the face, at which time the appellant brought his hidden firearm to bear from behind his back and shot the victim three times in rapid succession as the victim fell to the ground onto his back. (R. 137-139.) The second and third shots were fired as the victim was in the process of collapsing to the ground. The victim, who displayed no weapons, was short in height with dark hair. Following the shooting, the appellant got into his own car and left the scene. The witness, a white male, and his cousin left the scene in the witness's car. The fourth male left on foot. The appellant, appellant's cousin, and the witness's cousin are black males according to the witness. The witness identified the appellant's firearm, which the appellant had shown to him some time prior to the shooting shortly after appellant acquired the weapon, as a dark colored .380 caliber semiautomatic pistol. (R. 141.) Subsequent to the shooting, the appellant told the witness that he had destroyed the firearm by melting it. The witness, after speaking with the detective assigned to the investigation of this shooting, stated that he pled guilty on March 28, 1998, to four drug-related charges in Federal Court from acts that occurred in Lake County and that 36 counts were nolled as part of the plea bargain, which caused his potential prison sentence to be reduced from 20 years to 8 years. The witness stated that he was not promised a reduced sentence in the Federal Court as a result of cooperating with the shooting investigation, but that to him it "looked like a possibility." (R. 158-161.)
At that point the prosecution rested its case. The defense motion for acquittal was denied.
The defense case consisted of two witnesses.[3] The first such witness was Mr. Barrington Cole, who testified that at the time of the shootings he was working at the Splash nightclub as a sound engineer. Sometime after midnight, while walking from his parked car back to the nightclub, he heard two or three gunshot reports. He visually surveyed the area and, past the Flat Iron Cafe on Center Street, observed for no more than five seconds the victim fall in the street as three or four males ran away from the victim. The witness observed these fleeing men for no more than several seconds as they started to run down the street in the direction of Mickey Finn's Restaurant; none of them got into any car. The witness then went into Splash and told the security officer what had happened. In response, the Splash officer went outside and notified the other officer (Detective Moran). The witness then walked down to Mickey Finn's, but saw no one. The witness then returned to the scene and gave his name to the police. The next day he spoke on the telephone to the police.
The second witness for the defense was Mr. Dan D. Webb, who was a friend of the victim. The witness testified that he, the victim, and "Delbert" had a few drinks at Mickey Finn's. The trio walked back toward the Flat Iron Cafe after midnight. The witness asked the victim to move the victim's car which was blocking the witness's in the parking lot behind the Flat Iron Cafe. Delbert went inside the Flat Iron. The victim moved his car so that the witness could leave, and the witness observed the victim then repark his car in the same lot. The witness went home. In leaving the lot, the witness observed three black males and one white male standing near a parked car a short distance from the lot on Center Street. He does not know what the victim did after he (the witness) left the area.
At that point the defense rested and the court denied the renewed motion for acquittal.
Subsequent to closing arguments and instructions to the jury, the jury returned its verdict. Appellant was sentenced on a later date to life imprisonment with the possibility of parole after twenty years, three years actual on the firearm specification, plus one year for having a weapon while under a disability. This appeal presents three assignments of error for review.
 I WHETHER THE EVIDENCE PRESENTED BY THE STATE OF OHIO IN ITS CASE IN CHIEF WAS INSUFFICIENT AS A MATTER OF LAW AND PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE THE TRIAL COURT ERRED BY NOT DISMISSING THE CASE.
In this assignment, appellant argues that the evidence was insufficient to support his conviction for aggravated murder with prior calculation and design. See R.C. 2903.01(A).
The Ohio Supreme Court has discussed the standard to apply when reviewing a claim of insufficient evidence. In State v.Thompkins (1997), 78 Ohio St.3d 380, 386, the court stated as follows:
 [T]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.
With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 0.0. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S. Ct. 2211,2220, 72 L.Ed.2d 652, 663 citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
Id. at 386-387.
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The weight and credibility of the evidence are left to the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
The element of "prior calculation and design" is demonstrated where the perpetrator had sufficient time and opportunity for the planning of an act of homicide and the circumstances show a scheme to implement the calculated decision to kill. See State v. Cotton
(1978), 56 Ohio St.2d 8, 10. Also, a calculation to kill developed over a short duration may be sufficient to establish prior calculation and design. See State v. Bailey (1992), 90 Ohio App.3d 58,73; State v. Johnson (December 3, 1998), Cuyahoga App. No. 72541, unreported.
Viewing the record on appeal in a light most favorable to the prosecution, the State demonstrated that appellant shot the victim three times with a semi-automatic pistol, two of the shots being sufficient on their own to have caused the death off the victim. The "prior calculation and design" element of aggravated murder was demonstrated by the action of the appellant retrieving the firearm from his car, hiding it behind his back, and then using it at close range on the victim. In particular, shooting the victim a second and third time as the victim was collapsing to the street surface in a defenseless posture demonstrates that the appellant, in a calculating fashion of albeit limited duration, intended to take the life of Michael Roman.
The first assignment of error is overruled.
 II WHETHER THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The Thompkins Court, in addition to elaborating on the sufficiency standard, also discussed a challenge to the weight of the evidence.
Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487, 55 0.0. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's,supra, at 1594.
When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218,72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."). Thompkins, supra at 387.
In this assignment, appellant principally attacks the credibility and reliability of the state's final witness, Mr. Sidley. The evidence in this case does not weigh so heavily against conviction as to justify a new trial. Mr. Webb, who admittedly had been drinking that evening, did not observe the shooting or any act leading up to the confrontation and did not know what the victim did after re-parking his car in the lot behind the Flat Iron, but did corroborate Sidley's account that there were three black males and one white male clustered near a car parked on Center Street. Mr. Cole corroborates the number of shots fired and the number of men who were standing on Center Street when the victim was shot, but admittedly only observed these men for no more than several seconds following the shooting. While these men, according to Mr. Cole, initially turned to flee down Center Street toward Mickey Finn's, Mr. Cole did not know what these men did following these two or three seconds after which Mr. Cole went into the Splash nightclub. With Mr. Cole unable to further observe the scene inside the nightclub, these men could have jumped into cars and driven away as described by Mr. Sidley.
The second assignment of error is overruled.
 III WHETHER APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WAS VIOLATED.
The standard for evaluating an ineffective assistance of counsel claim was enunciated in State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraphs two and three of the syllabus, as follows:
 "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 358 N.E.2d 623; Strickland v, Washington [1984], 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
In this assignment, appellant complains that trial counsel: (1) made no attempt to locate Marwin Smith or appellant's cousin so that they could be called as witnesses for the defense; (2) "refused to allow Samuel to take the stand and failed to note on the record that Samuel asked to take the stand but he had advised him not to testify," see appellant's brief at 12; (3) failed to object to the admission of crime scene photographs; (4) failed to object to the admission of photographs prepared by the coroner's office relative to the receipt of the body and the conduct of the autopsy, and failed to object to admission of evidence from the shooting scene (bullets and shell casings); (5) failed to request a jury instruction on voluntary manslaughter as a lesser included offense of aggravated murder; (6) failed to keep his client apprised of what the trial strategy was.
With regard to complaint items 1, 2 and 6, there is no reasonable probability that, but for these alleged infirmities, the result of the trial would have been different. Appellate counsel merely makes the unsupported accusations relative to items 1 and 6 that these actions made a difference in the outcome without demonstrating what the additional witnesses would have testified to or what counsel should have told appellant to effect a different outcome. Additionally, relative to item 2, the court instructed the jury that defendant-appellant had a constitutional right not to testify and that the fact of his not testifying could not be considered for any purpose. (See R. 222.) We see no prejudice arising from the actions described in item 6.
With regard to items 3 and 4, the evidentiary exhibits were relevant, and not unduly repetitive or extreme or inflammatory. Hence, the trial court did not abuse its discretion in admitting these exhibits. We detect no unreasonable representation by trial counsel in not objecting to this evidence which evidence is customarily prepared and presented in every homicide case.
With respect to item 5, we note that an instruction on a lesser included offense is appropriate only where "the trier of fact can find for the defendant and against the state on some element of the greater offense which is not required to prove the commission of the lesser included offense and for the state on the elements required to prove the commission on the lesser offense."State v. Solomon (1981), 66 Ohio St.2d 214, 421 N.E.2d 139, paragraph two of the syllabus. It is thus within the discretion afforded a trial court to refuse to instruct a jury on a lesser included offense. State v. Dawson (Nov. 18, 1993), Cuyahoga App. No. 63122, unreported.
It is appellant's position that the testimony established the possibility that the shooting of the victim was brought on by "provocation" sufficient to incite him into using deadly force and that, therefore, the trial court should have included an instruction on voluntary manslaughter. R.C. 2903.03(A). The "provocation" in this case is the victim, who was physically smaller than the appellant and outnumbered by the appellant and the appellant's friends, pushing the appellant once or twice. This act of pushing, given the totality of the circumstances, is insufficient provocation to permit the use of deadly force. Thus, an instruction on the lesser included offense was unwarranted and trial counsel's representation was reasonable in not seeking such an instruction.
The third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J. and LEO M. SPELLACY, J., CONCUR
JAMES D. SWEENEY, JUDGE
[1] The defense, after the third witness for the prosecution, stipulated to the defendant-appellant having a weapon while under a disability. (R. 67, 170-172.)
[2] The witness stated that he and the appellant shared an apartment for three years in Ashtabula, Ohio.
[3] The defendant-appellant did not testify at the trial.
N.B. This entry is an announcement of the court's decision. See App. R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App. R. 22 (E) unless a motion for reconsideration with supporting brief, per App. R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App. R. 22(E). See, also, S. Ct.Prac.R. II, Section 2(A)(1).