JOURNAL ENTRY and OPINION
In State v. Towns, Cuyahoga County Court of Common Pleas Case No. CR-336639, applicant was convicted of murder with a firearm specification under R.C. 2903.02, attempted murder with a firearm specification under R.C. 2923.02 and 2903.02, and having a weapon while under disability under R.C. 2923.13. This court affirmed the conviction in State v. Towns (Oct. 23, 1997), Cuyahoga App. No. 71244, unreported. The Supreme Court of Ohio overruled applicant's motion for lease to appeal and dismissed his appeal on the ground that no substantial constitutional question existed. State v.Towns (1998), 81 Ohio St.3d 1443, 690 N.E.2d 15[690 N.E.2d 14] [Supreme Court of Ohio Case No. 97-2534].
Applicant has filed with the clerk of this court an application for reopening. Applicant asserts he was denied the effective assistance of appellate counsel because applicant's appellate counsel failed to assign as error that the record did not contain sufficient evidence that applicant "purposely" caused the death of Latee Dudley. We deny the application for reopening. As required by App.R. 26(B)(6), the reasons for our denial follow.
Initially, we note that App.R. 26(B)(1) provides, in part: "An application for reopening shall be filed * * * within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." App.R. 26(B)(2)(b) requires that an application for reopening include "a showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment."
This court's decision affirming applicant's conviction was journalized on November 3, 1997. The application was filed on May 7, 1999, clearly in excess of the ninety-day limit.
Applicant states he was unable to file a timely application for reopening because, "counsel became uncooperative and refused to send appellant any documents concerning his case," after he had told his appellate counsel that he did not have any more money to pay counsel. Application at 1. He also states he ultimately learned from other inmates that he could secure a copy of his trial transcript through the state public defender and that he could file an application for reopening under App.R. 26(B). This court has held that being a layman and experiencing delays in obtaining records related to one's conviction are not sufficient bases for establishing good cause for untimely filing of an application for reopening. State v. Newsom (Mar. 26, 1992), Cuyahoga App. No. 60280, unreported, reopening disallowed (Mar. 27, 1998), Motion No. 81361, at 7-8.
Additionally, applicant asserts that "had appellant been versed in the law or had appellate counsel advised appellant of this option [of filing an application for reopening]," applicant would have filed a timely application. Application at 2. Yet, "this court has established that ignorance of the law is no excuse for failing to file a timely application for reopening. State v.Klein (April 8, 1991), Cuyahoga App. No. 58389, unreported, reopening disallowed (March 15, 1994), Motion No. 49260, affirmed (1994), 69 Ohio St.3d 1481." State v. Railing (Oct. 20, 1994), Cuyahoga App. No. 67137, unreported, reopening disallowed (Aug. 30, 1996), Motion No. 72596, at 2. Being unaware does not establish good cause. Whereas, applicant's failure to demonstrate good cause is a sufficient basis for denying his application for reopening.
Likewise, the affidavit of applicant accompanying the application is not sufficient to comply with App.R. 26(B)(2), which provides, in part:
 An application for reopening shall contain all of the following:
* * *
 (d) A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record * * *.
The "Affidavit of Verity" accompanying the application merely states "that the facts contained in the foregoing Application for Re-Opening are true correct to the best of my knowledge and belief." (Punctuation and capitalization in original.) In Statev. Johnson (Dec. 14, 1998), Cuyahoga App. No. 72541, unreported, reopening disallowed (May 27, 1999), Motion No. 4430, we held that the affidavit of an attorney "which only swears to the truth of allegations contained in an application for reopening does not comply with the requirements of App.R. 26(B)(2)(d). State v.Franklin (1995), 72 Ohio St.3d 372, 650 N.E.2d 447; State v. Parker
(Nov. 24, 1997), Cuyahoga App. No. 71260, unreported, reopening disallowed (June 22, 1998), Motion No. 91891." Id. at 5.
We must also hold in this case that the affidavit of applicant does not set forth "the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal * * *." App.R. 26(B)(2)(d). Applicant's failure to comply with App.R. 26(B)(2)(d) is a sufficient basis for denying the application for reopening.
We also deny the application on the merits. Having reviewed the arguments set forth in the application for reopening in light of the record, we hold that applicant has failed to meet his burden to demonstrate that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). In State v. Spivey (1998), 84 Ohio St.3d 24,701 N.E.2d 696, the Supreme Court specified the proof required of an applicant:
 In State v. Reed (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 458, we held that the two prong analysis found in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). [Applicant] must prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a "reasonable probability" that he would have been successful. Thus [applicant] bears the burden of establishing that there was a "genuine issue" as to whether he has a "colorable claim" of ineffective assistance of counsel on appeal.
Id. at 25. Applicant cannot satisfy either prong of the Strickland
test. We must, therefore, deny the application on the merits.
On November 23, 1995, Thanksgiving Day, applicant and his friend, Teddy Douglas, were "riding around" in a car. Teddy was driving and applicant was in the passenger seat. They saw Marquis Dudley by a stopped car. Later, they saw the car Marquis was driving coming up behind them. Eventually, Teddy stopped the car and Marquis pulled up to the left of Teddy's car. Seated in the passenger seat of Marquis' car was his nineteen-year-old cousin, Latee Dudley.
"On the day in question, Dudely [sic] began exchanging words with appellant through an open car window for a short period of time before shots were fired. See (T. 444-49.)." Application at 5. One bullet entered Latee's right shoulder, passed along the lower portion of the neck, perforated the left lung and ultimately lodged in the tissues below the left collar bone. Latee died that afternoon.
In 1995, applicant, Teddy and Marquis, were high school students. Applicant acknowledges that "[t]here had been a confrontation between appellant and Marquis Dudely [sic] prior to the matter at issue." Application at 5. Applicant also asserts that "there's nothing in the record that suggest that appellant ever came in contact with Latee Dudely [sic] prior to the day in question." Id. As a consequence, applicant argues that "[t]he evidence clearly demonstrates that the appellant did not purposely cause the death of Latee Dudely [sic]." Id.
Applicant's sole assignment of error is:
 APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL WHEN APPELLATE COUNSEL FAILED TO RAISE THE ISSUE "INSUFFICIENT EVIDENCE" TO SUPPORT APPELLANT'S CONVICTION, IN VIOLATION OF SIXTH, AND FOURTEENTH AMENDMENT DUE PROCESS
Applicant correctly observes that R.C. 2903.02(A) provides: "No one shall purposely cause the death of another." (Emphasis added.) The term "purposely" is defined in R.C. 2901.22(A), which provides:
 A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
Applicant contends, however, that he lacked the requisite intent to be convicted of the murder of Latee Dudley. That is, applicant argues that he did not "purposely" cause the death of Latee, because his animosity was directed at Marquis Dudley and not Latee Dudley.
In State v. Richey (1992), 64 Ohio St.3d 353, 595 N.E.2d 915, certiorari denied in Richey v. Ohio (1993), 507 U.S. 989,113 S.Ct. 1592, 123 L.Ed.2d 157, Richey was convicted of aggravated murder with a specification alleging murder in the course of arson, aggravated arson, breaking and entering, and child endangering. He was sentenced to death for aggravated murder and consecutive prison terms for the other offenses. The court of appeals and the Supreme Court of Ohio affirmed the convictions and sentence.
Richey was baby-sitting Cynthia Collins, the two-year-old daughter of Hope Collins, in Collins's second-floor apartment.
 Circumstantial evidence established that while in Hope's apartment, Richey had spread gasoline and paint thinner around the apartment and ignited it.
* * *
 The evidence * * * established Richey's intention to kill [his ex-girlfriend] Candy [Barchet] and [her new boyfriend, Mike Nichols]. Before the fire, Richey threatened Candy and any new boyfriend she would acquire. At [a] party [several hours before the fire], Richey specifically threatened to burn Building "A" [the portion of an apartment complex which included the apartments of Barchet and Collins]. He then set the fire in a jealous rage directed at Candy and her new boyfriend. "It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts." State v. Johnson
(1978), 56 Ohio St.2d 35, 39, 10 O.O.3d 78, 80, 381 N.E.2d 637, 640; State v. Lott, supra, [1999] 51 Ohio St.3d [160] at 168, 555 N.E.2d [293] at 302.
 The fact that the intended victims escaped harm, and that an innocent child, Cynthia Collins, was killed instead, does not alter Richey's legal and moral responsibility. "The doctrine of transferred intent is firmly rooted in Ohio law." State v. Sowell (1988), 39 Ohio St.3d 322, 332, 530 N.E.2d 1294, 1305.
 Very simply, "the culpability of a scheme designed to implement the calculated decision to kill is not altered by the fact that the scheme is directed at someone other than the actual victim." State v. Solomon (1981), 66 Ohio St.2d 214, 218, 20 O.O.3d 213, 216, 421 N.E.2d 139, 142.
Id. at 353-354, 363-364.
In State v. Wheeler (May 25, 1995), Cuyahoga App. No. 66923, unreported, appeal dismissed as not involving any substantial constitutional question (1995), 74 Ohio St.3d 1444, 656 N.E.2d 345
[Case No. 95-1459], Wheeler's conviction for murder with a firearm specification, attempted murder, and having a weapon while under disability was affirmed. After Wheeler argued with Kevin Gordon, Gordon ran for the car driven by Aaran Brabson. While Brabson attempted to drive away, Wheeler shot into the car. Gordon later died.
 With respect to the attempted murder charge, the state's evidence showed that two of the shots were fired into a closed area (the passenger compartment of the car) where Brabson was sitting. One of the bullets nearly missed Brabson, passing through his shirt. The doctrine of transferred intent is applicable in determining the absence or presence of a purpose to kill in murder convictions. State v. Mullins
(1992), 76 Ohio App.3d 633.")
Id. at 9.
In State v. Douglas (Sept. 22, 1994), Cuyahoga App. No. 65779, unreported, Douglas was convicted of murder with a firearm specification. This court affirmed that conviction.
 The State's evidence established that defendant was going from place to place drinking alcohol with his armed friends in the middle of the day when they happened upon the two innocent school students walking to the store. At the same time, he saw a rival gang member in the direction in which Lanita Brooks [the victim] traveled and he fired the gun. It does not matter whether defendant aimed at "Misfit," the rival gang member, or at Lanita Brooks. Whatever intent he had for "Misfit" was transferred to Lanita Brooks.
Id. at 8 (also quoting Richey, supra, at 364).
Likewise, in this case, applicant may not maintain his assignment of error merely by asserting that he did not have any intent to harm Latee Dudley. In light of the doctrine of transferred intent, we cannot conclude that appellate counsel was deficient for failing to raise applicant's proposed assignment of error nor can we conclude that there was a "reasonable probability" that applicant would have been successful.
 [I]n regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes (1983), 463 U.S. 745, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy.
State v. Brewer (July 3, 1995), Cuyahoga App. No. 67782, unreported, reopening disallowed (Mar. 19, 1996), Motion No. 70080, at 4, discretionary appeal not allowed (1996), 76 Ohio St.3d 1496
[Case No. 96-1011].
The record reflects that applicant and Marquis Dudley had a history of animosity. After arguing for several minutes, applicant shot at least twice in the direction of Marquis Dudley killing Latee Dudley. Given this record, we may not second-guess appellate counsel. "The fact that appellate counsel chose different arguments to raise on appeal than those now proposed by applicant is insufficient to raise an issue of counsel's competence on appeal." State v. Abreu (May 5, 1997), Cuyahoga App. No. 70450, unreported, reopening disallowed (Mar. 19, 1998), Motion No. 90318, at 4, appeal dismissed (1998), 82 Ohio St.3d 1431 [Case No. 98-727]. Specifically, given the doctrine of transferred intent, we cannot conclude that applicant's appellate counsel was ineffective for failing to assign as error that there was insufficient evidence that applicant "purposely" caused the death of Latee Dudley.
As a consequence, applicant has not met the standard for reopening. Accordingly, the application for reopening is denied.
TERRENCE O'DONNELL P.J., and MICHAEL J. CORRIGAN, J., CONCUR.
 ____________________________ PATRICIA ANN BLACKMON, JUDGE