JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Jessie Lane appeals from his conviction after a jury *Page 3 
found him guilty of the murder of his wife. Appellant's wife died of a single gunshot wound to her back.
 {¶ 2} Appellant presents three assignments of error in which he asserts the state presented insufficient evidence of his guilt, his conviction is against the manifest weight of the evidence, and trial counsel provided ineffective assistance.
 {¶ 3} Following a review of the record, this court cannot agree with any of appellant's assertions. Consequently, his conviction is affirmed.
 {¶ 4} According to the testimony presented at trial, appellant and his wife had been married for twenty-three years. Appellant was over seventy years old and no longer worked. Appellant's wife was in her fifties, and maintained employment that provided the major source of income for their household. Appellant and his wife enjoyed alcohol; "they didn't drink in small quantities, it was usually large amounts."
 {¶ 5} On the night of November 5, 2005 appellant made a 9-1-1 call, stating that his wife was shot. The Cleveland Fire Department and the EMS were the first to respond, arriving at the scene at approximately 10:20 p.m. The house was dark, and, unsure of the situation, they waited for the police.
 {¶ 6} Upon the arrival of the zone cars, officers Jeffrey Weaver and Nathan Gobel went to the rear door. As they knocked, they initially received no response. Finally, appellant appeared in the doorway with a telephone in one hand. At the officers' insistence, he turned on some lights, and both the officers and the EMS technician could see that he had some blood on his clothing. *Page 4 
 {¶ 7} Gobel opened the door. It was located on a landing. On one side of the landing, a short stairway led to the kitchen; to appellant's rear, a longer stairway led to the basement. Weaver took appellant by one arm, asking him "what was going on."
 {¶ 8} To the EMS technician, appellant seemed unhurt, but oddly unresponsive. At that time, the responders noticed blood on the walls of the landing area and the basement stairway. When they looked down the steps, they saw a woman "lying face down at the bottom."
 {¶ 9} Gobel immediately secured appellant in handcuffs and escorted him to the zone car, while the others attended to the woman. They could see she already was dead. She was cold to the touch, had a gunshot wound to her back, and a large amount of blood was pooled around her on the basement floor which "had already started drying."
 {¶ 10} While EMS transported the victim, appellant's wife, to the morgue, police officers searched the scene for evidence. Gobel noticed a .32 caliber handgun on the kitchen counter next to the sink. The revolver's hammer was "cocked back in a firing position." Six live bullets remained in the gun; it had a seven-shot capacity. Appellant was arrested and taken to jail.
 {¶ 11} Michael Smith, the detective assigned to the case, arrived at the scene at approximately 11:30 p.m. In the rear entry area of the home, Smith noticed *Page 5 
defects on both the inside door and on the wall which indicated that a bullet had struck the door, then ricocheted. The bullet had lodged among the coats hanging on a rack affixed to the wall and was recovered. The bullet proved to have been fired from the gun found in the kitchen.
 {¶ 12} Smith also noticed the kitchen trash can contained an empty "twelve pack" beer box, several empty beer cans, and an empty pint bottle labeled "gin." The home showed no signs of "forced entry" and there was no indication that the bullet came from outside.
 {¶ 13} The autopsy performed on appellant's wife demonstrated she died as the result of a single gunshot. The bullet pierced her in the upper back and traveled completely through her body, exiting from her central upper chest.
 {¶ 14} According to the assistant coroner's testimony, the victim "wouldn't have died immediately;" rather, she remained alive for approximately twenty to thirty minutes as she "bled out," and may have been conscious for the first ten minutes. The victim's blood alcohol level was very high.
 {¶ 15} At approximately 3:00 a.m. on November 6, 2005, appellant provided a written statement to Smith. Appellant described the day he spent out making purchases of liquor and lottery tickets with his wife. He stated when they returned to the house, he remained in the garage to listen to music while she went inside.
 {¶ 16} According to his statement, after a time, appellant entered the house to *Page 6 
find his wife lying on her stomach in the basement. When he turned her over, he saw blood on his hands, and heard her tell him to "call the paramedics." He indicated he went to the telephone "hollering and crying," so he had difficulty speaking with the 9-1-1 operator. Appellant admitted the couple owned guns, including the one found on the kitchen counter, and admitted drinking beer that night.
 {¶ 17} Forensic analysis was performed on appellant's clothing and the victim's clothing. Appellant had gunshot residue on the right sleeves of both his jacket and his shirt. His wife had been shot from a distance of between three and four feet.
 {¶ 18} Appellant subsequently was indicted on one count of murder with two firearm specifications. His case proceeded to a jury trial. The jury ultimately found appellant guilty of the charges.
 {¶ 19} Appellant now appeals his conviction and presents three assignments of error for review.
 {¶ 20} "I. The verdict of guilt on the charge of murder was against the manifest weight of the evidence.
 {¶ 21} "II. The verdict of guilt on the charge of murder was not supported by sufficient evidence."
 {¶ 22} "III. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and *Page 7 Fourteenth Amendments to the United States Constitution."
 {¶ 23} In his first and second assignments of error, appellant essentially argues that since no one actually witnessed the shooting, the state failed to prove either that he committed the murder, or that the murder was committed purposefully. He therefore contends the jury's verdict cannot stand.
 {¶ 24} When an appellant raises a claim of insufficiency, this court is required to view the evidence adduced at trial and the inferences drawn therefrom in a light most favorable to the prosecution to determine if a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. State v. Martin
(1983), 20 Ohio App.3d 172, 175. Circumstantial evidence of guilt may be sufficient to support a conviction. State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus.
 {¶ 25} The test to utilize when addressing the issue of the manifest weight of the evidence was set forth as follows:
 {¶ 26} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here the test is much broader. The Court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * See Tibbs v. Florida (1982), *Page 8 457 U.S. 31, 38, 42." State v. Martin, supra.
 {¶ 27} Moreover, a reviewing court will not reverse a verdict where there is substantial evidence upon which the jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169; State v.Jenks, supra. It is axiomatic that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to determine. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 28} The jury found appellant guilty of murder, in violation of R.C.2903.02(A), which prohibits a person from "purposely" causing the death of another. "Purpose" is defined as the "specific intention to cause a certain result." R.C. 2901.22(A). The intent to kill may be presumed where the "natural and probable consequence of a wrongful act is to produce death" and may be inferred from all the surrounding circumstances. In re: Rivera (Jan. 27, 1994), Cuyahoga App. No. 65078, citing State v. Robinson (1954), 161 Ohio St. 213.
 {¶ 29} The evidence in this case proved appellant was discovered alone in the house with his dead wife lying on the basement floor at the foot of the stairs. His wife had been shot once in the back with a gun the couple owned. The gun had been fully loaded, and required between six and twelve pounds of pressure on the trigger to fire.
 {¶ 30} The bullet clearly struck her while she stood on the rear landing, passed *Page 9 
through her, hit the rear door, ricocheted into the wall, and then lodged among the coats on the rack. Appellant's wife tumbled down the basement stairs, where she lay, bleeding copiously, but remaining conscious for at least ten minutes. It required at least twenty to thirty minutes for her to completely "bleed out."
 {¶ 31} Appellant's subsequent call to 9-1-1 led the EMS to be dispatched at 10:17 p.m. EMS arrived at 10:20 p.m. The police arrived within ten minutes thereafter. By that time, appellant's wife had been dead for at least enough time that she was cold to the touch and her blood on the basement floor had started to dry.
 {¶ 32} When viewed in a light most favorable to the prosecution, appellant's purpose to kill his wife can be inferred from the foregoing circumstances. The gunshot residue on their clothing proved he fired the shot at his wife at close range. Obviously, he permitted her to lay where she fell long enough for her to die before he summoned aid. Thus, the evidence supported a conclusion appellant intended to kill his wife. Appellant's conviction, therefore, was supported by sufficient evidence.In re: Rivera, supra.
 {¶ 33} The evidence of appellant's guilt, moreover, found corroboration in other evidence presented. Appellant's daughter-in-law testified that, in her experience, appellant could become "belligerent when he drank." She further testified that when her mother and appellant argued, her mother often would "just walk away." In his statement to Smith, appellant admitted the firearm belonged to *Page 10 
him and his wife, he knew where it was kept, and he had been drinking after coming home that night.
 {¶ 34} As contained in his statement, appellant's version of the incident implied someone else was responsible for the murder, and appellant remained unaware because he was listening to compact discs in his car. However, this version was inconsistent with the evidence.
 {¶ 35} The house was locked when the police arrived, and no one, beside appellant and his wife, was inside. The bullet had to have been fired indoors. The victim died from a single gunshot fired at close range. Furthermore, the victim had been dead for some time before appellant called 9-1-1. Finally, no compact discs were inside the car.
 {¶ 36} In short, since consistent and credible evidence supported the jury's verdict, appellant's conviction for the gunshot murder of his wife is not against the manifest weight of the evidence. State v.Prather, Cuyahoga App. No. 83227, 2004-Ohio-2395; State v. Day, Cuyahoga App. No. 79368, 2002-Ohio-669; In re: Rivera, supra.
 {¶ 37} Appellant's first and second assignments of error, accordingly, are overruled.
 {¶ 38} Appellant argues in his third assignment of error that trial counsel provided ineffective assistance because he: 1) failed to request a jury instruction on the lesser offense of voluntary manslaughter; 2) made only "minimal" arguments *Page 11 
with respect to motions for acquittal; 3) limited his cross-examination of some of the prosecution witnesses; and, 4) stipulated to the admission of the 9-1-1 tapes. Nevertheless, the record does not support appellant's argument.
 {¶ 39} The claim of ineffective assistance of counsel requires proof that "counsel's performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from counsel's performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976),48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v.Bradley, supra, paragraph three of the syllabus.
 {¶ 40} The burden is on appellant to prove ineffectiveness of counsel.State v. Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id. All of the issues appellant raises with respect to counsel's performance concern matters of trial strategy. State v.Day, supra.
 {¶ 41} Appellant first contends the evidence warranted a jury instruction on voluntary manslaughter, therefore, trial counsel's failure to request that instruction constitutes ineffective assistance. In light of the defense strategy, this contention is baseless. *Page 12 
 {¶ 42} An instruction on a lesser offense is appropriate only when the evidence warrants it. State v. Solomon (1981), 66 Ohio St.2d 214. In this case, in spite of appellant's contention, there was no evidence either that appellant's wife provoked him, or that appellant acted under the influence of a sudden passion or a sudden fit of rage. State v.Gant (May 18, 1995), Cuyahoga App. No. 67199. Indeed, the evidence indicated appellant had been drinking so that his inhibitions were lowered, had money issues with his wife, found a gun and purposefully shot her, then waited patiently for her to die before he called 9-1-1.
 {¶ 43} The evidence of his client's guilt was overwhelming. In light of it, defense counsel made the only reasonable tactical decision possible: he did not seek to convince the trial court that acquittal was appropriate, rather, counsel sought to convince the jury that, because appellant was so drunk, he had neither the actual intent to commit the crime, nor any memory of committing it.
 {¶ 44} This scenario made it serve no purpose for counsel to extensively cross-examine some of the prosecution witnesses. Furthermore, counsel reasonably could calculate that the 9-1-1 tapes would demonstrate appellant lacked any real cognizance of what he had done.
 {¶ 45} The record reflects defense counsel nearly was successful in this strategy. During its deliberations, the jury asked the trial court if appellant could be said to have "diminished capacity" to commit murder.
 {¶ 46} Since appellant, therefore, can demonstrate neither that trial counsel's *Page 13 
performance was deficient, nor that his actions prejudiced appellant, appellant's claim of ineffective assistance fails. State v. Day, supra.
 {¶ 47} Accordingly, appellant's third assignment of error also is overruled.
 {¶ 48} Appellant's conviction is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANN DYKE, J. CONCURS MARY J. BOYLE, J. CONCURS IN JUDGMENT ONLY *Page 1