OPINION
{¶ 1} Defendant-appellant David M. Evanitcka appeals from his conviction and sentence in the Stark County Court of Common Pleas on one count of murder, in violation of R.C. 2903.02(A). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Defendant-appellant David M. Evanitcka was indicted on one count of murder, in violation of R.C. 2903.02(A). The indictment arose from the allegation that appellant killed his wife, Jennifer Evanitcka, on November 19, 2003, by stabbing her 21 times.
 {¶ 3} Initially, appellant entered a plea of not guilty by reason of insanity. However, after evaluation, appellant stipulated to his competency and sanity and the matter proceeded. On April 29, 2004, prior to trial, appellant filed a written motion requesting a jury instruction on the lesser included offense of voluntary manslaughter.
 {¶ 4} The matter proceeded to a jury trial on May 7, 2004. The State presented 13 witnesses. Appellant presented six witnesses and testified in his own behalf.
 {¶ 5} The evidence presented at trial can be summarized as follows. Appellant and Jennifer Evanitcka were married in 2000 and had one child. The Evanitckas lived together with that child and Jennifer's two children from a previous relationship. In 2003, the Evanitckas were having marital problems and Jennifer informed appellant that she had a new boyfriend and wanted a divorce. The week of November 12, 2003, appellant went hunting with his friends in Pennsylvania. Appellant talked to his friends about the problems he was having in his marriage. Appellant specifically stated that Jennifer was seeing another man and they would probably be getting a divorce.
 {¶ 6} Appellant returned from his hunting trip and made arrangements to remove his possessions from the marital home. On Monday, November 17, 2003, appellant went to the marital home to box up some possessions. Appellant and Jennifer had an argument and the Minerva Police Department was called. An officer responded to the residence. Eventually, the officer left the home and appellant, Jennifer and one of Jennifer's friends remained to continue packing. The morning of Tuesday, November 18, 2003, appellant returned to the marital home. After moving some of his possessions to his sister's home, appellant returned to the marital home to take the three children to a movie and dinner. Subsequently, appellant returned to the marital home with the three children. Thereafter, Jennifer returned to the marital home. Jennifer and appellant had a verbal argument. Appellant grabbed a knife off the dining table and stabbed Jennifer 21 times and then stabbed himself.
 {¶ 7} Around 7:00 P.M. an "open line" 9-1-1 call was placed from the home. Testimony showed that appellant made the call because he did not want the kids to see him and Jennifer laying on the floor. An officer from the Minerva Police Department responded.
 {¶ 8} When the officer reached the marital home, he found a door open and went in. In a room that appeared to be a dining room, he found the lifeless body of Jennifer on the floor. She was lying on her back with her eyes open and appeared to have numerous stab wounds to her chest. The Patrolman found appellant on the floor on his back in a little bit of distress stating "let me die, let me die." Vol. II, pg. 26. His right palm was open and a bloody cutlery knife was lying within inches of his right hand, as though he had just released it. Id. at 28.
 {¶ 9} An ambulance was called. Appellant told one of the responding emergency medical technicians hereinafter [EMT] to leave him alone and let him die. Appellant stated that he and Jennifer had gotten into a verbal fight and the next thing he knew Jennifer was on the floor and he didn't know what happened. Vol. II, pg. 77-78. Appellant then told the EMT that he wanted to end Jennifer's life and his life because he "didn't want her to raise his kids and he didn't want to spend the rest of his life in jail." Vol. II, pgs, 79-80, 83 and 89.
 {¶ 10} Appellant was taken by ambulance to a hospital. Appellant was described as coherent with puncture wounds to his chest and the back of his neck. An emergency room technician who treated appellant testified that appellant stated "I think I killed my wife, what have I done, what have I done, just let me die, I don't want to go to prison, I'm not a bad person." The technician testified that appellant repeated that "over and over.'" Vol. II, pg. 131.
 {¶ 11} Jennifer was taken by ambulance to another hospital where she was pronounced dead. An autopsy revealed multiple stab wounds including stab wounds to the back of the neck, the right upper back, the right flank, two defensive type wounds on the hand and thumb, and 14 stab wounds in the chest and aortic area. In addition, Jennifer had contusions on her left forearm and neck caused by blunt force. The knife wounds perforated her heart, both lungs, pulmonary artery, liver and aorta. In all, she was stabbed 21 times. Her cause of death was determined to be multiple stab wounds.
 {¶ 12} At the conclusion of the presentation of the evidence, appellant renewed his request for a jury instruction on voluntary manslaughter. The trial court denied the request.
 {¶ 13} Upon deliberation, the jury returned a verdict of guilty as charged. Subsequently, appellant was sentenced to a prison term of 15 years to life.
 {¶ 14} It is from this conviction and sentence that appellant appeals, raising the following assignments of error:
 {¶ 15} "I. The trial court erred and thereby deprived the appellant, David Evanitcka, of due process of law as guaranteed by theFourteenth Amendment of the United States Constitution and Article One, Secton Ten of the Ohio Constitution, as the prosecution failed to offer sufficient evidence to prove beyond a reasonable doubt that Mr. Evanitcka acted purposely when he killed his wife Jennifer Evanitcka.
 {¶ 16} "II. The trial court erred and thereby deprived the appellant, Mr. David Evanitcka, of due process of law as guaranteed by theFourteenth Amendment of the United States Constitution and Article One, Section Ten of the Ohio Constitution by finding Mr. Evanitcka guilty, as the verdict for the charge of murder was against the manifest weight of the evidence.
 {¶ 17} "III. The trial court erred to the prejudice of the appellant when it denied appellant david evanitcka's motion to allow the jury to consider the lesser included offense of manslaughter.
 {¶ 18} "IV. Appellant Mr. David Evanitcka was denied effective assistance of counsel in violation of the sixth amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution."
 I II {¶ 19} In the first assignment of error, appellant contends that the State failed to prove beyond a reasonable doubt that appellant acted purposely when he killed his wife. Specifically, appellant challenges the sufficiency of the evidence in regard to the element of intent. Appellant asserts that the crux of this case is whether appellant acted purposely or in the heat of sudden passion. In the second assignment of error, appellant argues that the conviction was against the manifest weight of the evidence. This assignment of error is also based upon an argument that appellant did not act with the necessary intent to convict him of murder. We will consider these assignments of error together.
 {¶ 20} In considering an appeal concerning the sufficiency of the evidence, our standard of review is as follows: "[T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 21} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." Id. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus.
 {¶ 22} Appellant was charged with murder in violation of R.C.2903.02(A). That statute states as follows: "(A) No person shall purposely cause the death of another. . . ." (Emphasis added.) The term "purpose" is defined in R.C. 2901.22. That statute states that "a person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).
 {¶ 23} Because a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case. State v. Logan (1979), 60 Ohio St.2d 126, 131,397 N.E.2d 1345. Thus, culpable mental states can be established by circumstantial as well as direct evidence. State v. Kincaid, Wayne App. No. 01CA007947, 2002-Ohio-6116 (citing Kreuzer v. Kreuzer (2001),144 Ohio App.3d 610, 613, 761 N.E.2d 77.)
 {¶ 24} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." State v. Daniels (June 3, 1998), Summit App. No. 18761, 1998 WL 289417 (quoting State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph one of the syllabus). "Circumstantial evidence and direct evidence inherently possess the same probative value." Statev. Smith (Nov. 8, 2000), Summit App. No. 99CA007399, 1998 WL 289417, (quoting Jenks, supra. at paragraph one of the syllabus). Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the. . . . factfinding function is concerned, all that is required of the [fact finder] is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." State v. Chisolm (July 8, 1992), Summit App. No. 15442, 1992 WL 161286 (quoting Jenks, supra. at 272).
 {¶ 25} Inferences cannot be based on inferences. However, a number of conclusions can result from the same set of facts. State v. Lott (1990),51 Ohio St.3d 160, 168, 555 N.E.2d 293 (citing Hurt v. Charles J. RogersTransp. Co. (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. Lott, 51 Ohio St.3d at 168.
 {¶ 26} In this case, we find that there was sufficient evidence upon which a reasonable trier of fact could have found beyond a reasonable doubt that appellant acted purposely to kill his wife. During the trial, appellant admitted to stabbing his wife because he "just wanted it all to be over." Vol. III, pg. 265. One of the EMT's who treated appellant at the scene testified that appellant stated that he wanted to end Jennifer's life because he did not want Jennifer to raise his kids and stabbed himself because he did not want to spend the rest of his life in jail. Vol. II, pgs. 79-80, 83 and 89. Another EMT testified that appellant stated that he hurt his wife because she was going to leave him. Vol. II, pg. 97. Lastly, the Minerva Police Chief Robert First testified that appellant stated "you're the Chief, you can let them, (referring to the EMT's), let them let me die, [Jennifer] had a boyfriend, I know she was leaving me for another man and [I] didn't know what else to do but this." Vol. II, pg. 303-304.
 {¶ 27} An Emergency Room Technician testified that once at a hospital, appellant stated that he thought he killed his wife and asked that he be let to die because he did not want to go to prison. Vol. II, pg. 131. A nurse at the hospital heard appellant repeatedly state that he had killed his wife and that he just wanted to die because he did not want to go to prison. Vol. II, pgs. 170-171.
 {¶ 28} Appellant's comments illustrate appellant's intentions when he stabbed his wife. They demonstrate that appellant's intention was to kill his wife because he did not want her to leave him and he did not want her to raise his children. The fact that he pleaded to be allowed to die, not because he loved his wife and did not mean to kill her, but because he knew that he faced going to prison and did not want to go to prison, further illustrates that he acted with purpose when he stabbed his wife to death.
 {¶ 29} In addition, there was circumstantial evidence that appellant purposely killed his wife. Appellant stabbed his wife twenty one times. The victim's vital organs, including her heart, lungs, liver and pulmonary artery were perforated. After having stabbed his wife in these vital organs, appellant, who was a hunter, stated that he had tried to stab himself in the heart but must have missed. Vol. II, pg. 122.
 {¶ 30} Accordingly, we find that there was sufficient evidence to support the jury's conclusion that the State proved the element of purpose when it found appellant guilty and that the conviction was not against the manifest weight of the evidence. Appellant's first and second assignments of error are overruled.
 III {¶ 31} In the third assignment of error, appellant contends that the trial court erred when it denied appellant's motion to allow the jury to consider the lesser included offense of voluntary manslaughter.[1] We disagree.
 {¶ 32} Generally, trial courts are required to give a jury instruction on a lesser included offense "where the evidence presented at trial would reasonably support an acquittal on the crime charged and a conviction on the lesser included offense." State v. Allen (1995), 73 Ohio St.3d 626,637, 653 N.E.2d 675; in accord State v. Solomon (1981), 66 Ohio St.2d 214,421 N.E.2d 139, paragraph two of the syllabus.
 {¶ 33} In arguing this assignment of error, appellant has not provided this court with a statement of the evidence presented at trial which would support a jury instruction on the lesser included offense of manslaughter. All that appellant states in his merit brief is that "[t]here was evidence of circumstances that could have given rise to a sudden passion on the part of [appellant], the situation had certainly been building up to such a scene."
 {¶ 34} Appellant had a duty to present to this court an argument that contains "the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of his contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App. R. 16(A)(7). In this case, appellant has failed to state reasons in support of the contentions. The failure to comply with this requirement is grounds in and of itself to overrule appellant's assignment of error.
 {¶ 35} Appellant's failure to state the reasons in support of this assignment of error may be explained, however, by a statement made in assignment of error IV of appellant's merit brief. In the fourth assignment of error, appellant asserts that trial counsel was ineffective because counsel "never presented any expert medical testimony or any other evidence to support [the] theory" that appellant acted in a state of passion. Appellant's Merit Brief, pg. 11.
 {¶ 36} In that appellant failed to present any reasons in support of the issue raised in this assignment of error and in fact conceded that there is no evidence in the record to support this issue, we find that this assignment of error must fail.
 {¶ 37} Accordingly, appellant's assignment of error is overruled.
 IV {¶ 38} In the fourth and final assignment of error, appellant contends that he was denied effective assistance of trial counsel. We disagree.
 {¶ 39} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373.
 {¶ 40} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, supra at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, there is a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 41} In order to warrant a reversal, appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, (citing Lockhart v. Fretwell (1993), 506 U.S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180). Further, both the United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley, supra. at 143 (quoting Strickland, supra. at 697).
 {¶ 42} Specifically, appellant contends that while trial counsel continually argued that the incident occurred during a state of passion on the part of appellant, trial counsel never presented any expert medical testimony or any other evidence to support this theory. However, the fact that trial counsel presented no such evidence precludes this court from reaching the merits of this assignment of error. This court's review is limited to the record created in the trial court. With no presentation of such evidence, it is pure speculation that any such evidence actually existed. Thus, this issue is not properly raised on direct appeal. State v. Lawless, Muskingum App. No. CT2000-0037, 2002-Ohio-3686 (citing State v. Cooperrider (1983), 4 Ohio St.3d 226, 228,448 N.E.2d 452 and State v. Hamlett, Richland. App. No. 03 CA 34,2004-Ohio-38).
 {¶ 43} Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 44} The judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Gwin, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Voluntary manslaughter is defined by R.C. 2903.03(A). That statute states that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another. . . ."